**BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN** and **Brotherhood of Railroad Trainmen, Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 17316.

United States Court of Appeals Ninth Circuit.

April 16, 1962.

Ira Schneier, Tucson, Ariz., and McKesson, Renaud & Cook, Phoenix, Ariz., for petitioner.

Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Samuel M. Singer and Herman M. Levy, Attys., for the N. L. R. B., Washington, D. C., for respondent.

Before CHAMBERS and HAMLEY, Circuit Judges, and SOLOMON, District Judge.

SOLOMON, District Judge.

The sole question presented by this appeal is whether the Industrial Commission of Arizona is a state agency established to mediate and conciliate disputes.

If it is such an agency, then the Brotherhood of Locomotive Firemen & Enginemen (Firemen) and the Brotherhood of Railroad Trainmen (Trainmen) were guilty of an unfair labor practice because of their failure to notify the Arizona Commission of the existence of a dispute as required by § 8(d) (3) of the Labor Management Relations Act.[1]

The pertinent section of the Arizona statute, as it relates to the Arizona Industrial Commission, reads:[2]

---

1. 61 Stat. 142 (1947), 29 U.S.C.A. § 158 (d) (3).

2. A.R.S. § 23–107.

"§ 23–107.  General powers

"A. The commission has full power, jurisdiction and authority to:
* * *

3.  Promote the voluntary arbitration, mediation and conciliation of disputes between employers and employees."

The National Labor Relations Board (Board) contends that the language of the Arizona statute shows that the Arizona Industrial Commission has clearcut powers of mediation and conciliation and that the statements in the United States Department of Labor bulletin "A Guide to State Mediation Laws and Agencies"[3] support such construction.

The Brotherhoods on the other hand deny that the Arizona Commission has such powers and they contend that the statute creating the Commission falls far short of informing people subject to its reach that the Commission is an agency of mediation and conciliation, particularly when construed in relation to the functions which the Commission actually performed.

Under § 8(d) of the Act, where there is a collective bargaining contract between an employer and its employees, no party may modify or terminate the contract unless such party:

"(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

"(2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;

"(3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and

"(4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later.

* * * * * *

" * * * Any employee who engages in a strike within the sixty-day period specified in this subsection shall lose his status as an employee of the employer engaged in the particular labor dispute, * * *."

The parties agree that in those cases in which the parties fail to reach an agreement among themselves, the Federal Mediation and Conciliation Service, together with state agencies established to mediate and conciliate disputes where they exist, must be given an opportunity to aid in resolving such disputes. Local Union 219, Retail Clerks International Association v. National Labor Relations Board, 1959, 105 U.S.App.D.C. 232, 265 F.2d 814. It is conceded that the failure to comply with those provisions constitutes a violation of the Act, and that an employee who engages in a strike in which his bargaining representative has failed to comply with the provisions of the Act, loses his status as an employee of his employer.

In this case, the Trainmen since 1942 have been the exclusive bargaining representative for the employees of Phelps-Dodge Corporation (Phelps-Dodge) at two of its Arizona plants, and the Firemen since 1954 have been the exclusive bargaining representative at the third Arizona plant of Phelps-Dodge.

In the latter part of 1959, during the period in which the Brotherhoods were

3.  Dep't Labor Bull. 176 (Revised 1958).

meeting with Phelps-Dodge, the Brotherhoods served a 60-day notice on Phelps-Dodge of their intention to modify their collective bargaining contract, and they likewise served the 30-day notice on the Federal Mediation and Conciliation Service. No similar 30-day notice was served upon any Arizona state agency. On February 12, 1960, after the expiration of the 60-day cooling off period and after the expiration of the 30-day notice to the Federal agency, the Brotherhoods jointly called strikes and picketed all three of Phelps-Dodge's Arizona plants.

Phelps-Dodge filed unfair labor charges against the Brotherhoods, charging among other things that the Brotherhoods, by failing to notify the Department of Labor under the Arizona Industrial Commission of the existing dispute, violated § 8(d) (3) of the Act.

At a Board hearing, Mr. Thomas Houlihan, the Director of the Arizona State Labor Department,[4] testified that his department assists in the collection of wages due employees; patrols and enforces laws relating to children, females, and public employees; and supervises and licenses employment agencies. The three industrial commissioners devote their time and energies to the Workmen's Compensation program. During his five years with the Commission, Mr. Houlihan has done no mediation or conciliation work, and he has never been requested to do such work. Although he had never received a notice from an employer concerning a labor dispute, he had received a few such notices from labor organizations. These notices were acknowledged and filed, and nothing further was done with respect to them. The statute did not define the duties of the Commission and the Commission did not promulgate any rules with respect to mediation or conciliation services. No funds have ever been appropriated by the Arizona legislature for mediation and conciliation services. Mr. Houlihan knew of no agency in Arizona established to mediate and conciliate labor disputes.

The Trial Examiner and the Board found that the Brotherhoods were required to give the State Labor Department an 8(d) (3) notice, and having failed to serve such a notice, the Brotherhoods were engaged in an unlawful strike, and all of the employees who engaged in this strike forfeited their rights under the Act.

We do not believe that the Arizona statute [A.R.S. § 23–107(A) (3)], particularly as construed and applied by the Arizona State Labor Department, brings that department or the Industrial Commission within the reach of the Federal Act.

The authorization of Section 23–107 (A) (3) to "promote the voluntary arbitration, mediation and conciliation of disputes" does not clearly confer upon the Industrial Commission the duty to mediate and conciliate labor disputes. It differs greatly from the mandatory language of Section 32–308, which requires that the Arizona Board of Barber Examiners "shall act as mediator and arbitrator in any controversy * * *."

Unlike the mediation and conciliation statutes of most states, Section 23–107 does not provide for the creation of a board of arbitration or the appointment of mediators or referees; does not set forth the circumstances under which the Commission shall offer its services or assume jurisdiction over a dispute; and does not prescribe rules of procedure for the investigation and handling of disputes or the promulgation of such rules by the Commission itself.

The strike was not called for more than 30 days after the Brotherhoods had given the Federal Mediation Service notice of the existence of the labor dispute and not until the efforts of the Federal agency to resolve the dispute had failed. A notice to the Arizona Commission would not have contributed to the conciliation or mediation process. The Arizona Commission had no history of performing such services, had neither the funds nor

---

4. There is no statutory authority for either such department or position.

the personnel to perform them, and had no intention of doing so in this case.

The notice would not have extended the cooling off period during which the parties would have been required to continue their discussions because under the Act, notices to the Federal and State agencies were to be served at the same time and for the same 30-day period.

The only effect of the Brotherhoods' failure to have served the notice on the State agency was to subject those members who participated in the strike to a forfeiture of their employee status with all that such loss implies.

The Labor Management Relations Act had a dual purpose—to substitute collective bargaining for economic warfare and to protect the rights of employees to engage in concerted activities for their own benefit. Mastro Plastics Corp. v. National Labor Relations Board, 350 U.S. 270, 284, 76 S.Ct. 349, 100 L.Ed. 309 (1955). "A construction which serves neither of these aims is to be avoided unless the words Congress has chosen clearly compel it." National Labor Relations Board v. Lion Oil Co., 352 U.S. 282, 289, 77 S.Ct. 330, 1 L.Ed.2d 331 (1956).

We do not read § 8(d) (3) of the Federal Act as compelling us to hold that a state agency with no defined duties, no rules or regulations with reference to mediation or conciliation services, no personnel or funds with which to perform such services and no history of ever having performed such work or of ever having been requested to do it, was a "State * * * agency established to mediate and conciliate disputes".

The language of the state statute and the history of the agency charged with its administration is a much more reliable guide of services which the Department was authorized as well as equipped to perform, and which it did in fact perform, than the conclusions of the United States Department of Labor employees who prepared Bulletin 176, "A Guide to State Mediation Laws and Agencies".

The petition to set aside that portion of the Board's order which found the petitioners guilty of a Section 8(b) (3) violation is granted. The notice which petitioners are required to post in connection with a violation not here contested should be modified accordingly.